PARKER, Appellant, v. LINDSAY et al., Respondents.

(176 N. W. 1018.)

File No. 4658.     Opinion filed March 26, 1920.)

1. **Brokers—Realty Sale—Vendors' Telegram Suggesting Net Price and Further Information, Whether a Sale Contract, Whether Commission Earned.**

Defendant's land owners wired broker A: "N wires offer for land. How much cash, some paid annually and rate of interest? Is buyer strong financially? Inclined to sell to responsible man. One thirty five net. Purchaser paying your commission and all war and revenue taxes, get your banker figure tax. Letter mailed reach N Saturday." Plaintiff and A (who assigned his commission rights to plaintiff) had or soon thereafter produced a prospective purchaser who in writing agreed to pay $145 per acre, on which basis a sale was eventually closed. **Held,** that the sending of the telegram did not bind the vendors; that some further action on their part was necessary to make them liable even on quantum meriut, as they were free to reject the written proposition to purchase at $145, in which case no liability for commissions would have been incurred.

2. **Same—Acceptance of Subsequent Higher Offer, Whether Minds Met Re Commissions—Quantum Meriut.**

**Held,** further, that by subsequently accepting the offer of $145 per acre, vendors became liable for commissions; upon contract if minds of parties ever met re commissions; otherwise on quantum meriut.

3. **Same—Vendor's Telegram Informing of Third Person's Offer— Said Offer Based on Broker's Statement Including Commission—Non-meeting of Minds Re Sale**

The offer of N, referred to in vendors' said telegram to A, was a telegram stating in part: "Just got letter from A saying he can get $135. He will want one dollar (per acre) commission." A testified he never advised N as to commission he would expect. **Held,** the telegram to A did not so clearly state re commissions as to warrant A assuming he could have all over $135 per acre and the tax; especially in that

the telegram he received advised that vendors were wiring him because of information received from N; it being clear that in sending the telegram to A, vendors contemplated a commission of $1 per acre; that the minds of the parties never met.

4.  Evidence—Broker's Commission, Realty Sale—Vendors' Wire to Broker Re Third Party's Offer—Said Offer Informing of Broker's Ability to Get Offer and Stating Commission, Whether Competent Evidence Re Commission.

Where land owner wired broker A that N "wires offer for land," and inquires as to terms re payments and financial responsibility, and that vendors are inclined to sell at a stated net price, "Purchaser paying your commission and all war and revenue taxes," held, in a suit by A's assignee for commission on a subsequently closed sale to another party at a higher price, that N's telegram to vendors stating: "Just got letter from A saying he can get $135" per acre, and "he will want $1 commission," was competent evidence in determining whether the minds of vendors and the brokers met re sale and commission.

Appeal from Circuit Court, Charles Mix County. Hon. ROBERT B. TRIPP, Judge.

Action by R. S. Parker, against J. W. Lindsay and another, to recover a broker's commission upon an alleged sale of realty. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Affirmed.

G. M. Caster, for Appellant.

A. B. Beck, for Respondent.

(1)  To point one of the opinion, Appellant cited: Harris et al. v. Van Vraken, 155 N. W. (N. D.) 65.

(3)  To point three, Respondent cited: Gissel v. Bank of Woonsocket, 12 S. D. 93.

(4)  To point four, Respondent cited: Kimm v. Walters, 28 S. D. 255.

WHITING, J.    Plaintiff and one Amundson were associated as real estate brokers. They sold a tract of land belonging to defendants. Amundson assigned to plaintiff all claims growing out of such sale which he had against defendants. This action was then brought to recover, on express contract, commissions which plaintiff claimed as due from defendants. The action resulted in a directed verdict for defendants.

From the judgment entered thereon and from an order denying a new trial this appeal was taken.

·The facts were undisputed, and nearly all were stipulated. We shall examine the record, not merely to determine whether the facts properly established sustained the cause of action pleaded, but also to determine whether such facts would sustain any cause of action in favor of appellant.

The defendants sent Amundson the following telegram:

"Newton wires offer for land. How much cash, sum paid annually and rate of interest? Is buyer strong financially? Inclined to sell to responsible man. One thirty five net. Purchaser paying your commission and all war and revenue taxes. Get your banker figure tax. Letter mailed reach Newton Saturday."

Plaintiff and Amundson already had, or soon thereafter procured, a prospective purchaser, who agreed to pay $145 per acre for the land. This party signed a writing containing the proposed terms. This writing was submitted to respondents, and eventually a sale was closed at $145 an acre.

[1] Appellant contends that, by sending the telegram to Amundson, respondents entered into a contract under which Amundson became entitled to everything he could procure over $135 per acre for the land. In this appellant is clearly wrong. The sending of such telegram did not have any effect of binding respondents in any manner. At the most it merely advised Amundson that they were inclined to make a sale if they could get $135 net. They asked for further information. It took some further action on their part to make them liable even on quantum meruit, as it is plain that they were free to have rejected the proposition evidenced by the writing signed by the purchaser, and, in case of such rejection, would have incurred no liability for commissions.

[2] But, by accepting the offer and closing the sale, respondents became liable for commissions; upon contract if the minds of respondents and Amundson ever met on the amount of commissions; otherwise upon quantum meruit. As there was no evidence as to what a fair quantum meruit would be, we

need only determine whether the minds of these parties ever met on the amount of commissions to which Amundson should be entitled in case of sale.

[3]    It will be noticed that the telegram sent Amundson mentioned one "Newton" as the party from whom respondents learned that there had been an offer on the land. The telegram itself did not indicate what information was contained in Newton's letter. There is no evidence to indicate what relation Newton bore to the parties to this contract. Respondents offered and there was received in evidence, over appellant's objection, the telegram which respondents had received from Newton This telegram read as follows:

"Just got a letter from Amundson saying he can get one hundred thirty five for your three hundred twenty acres. He will want one dollar commission. Weather is dry and warm, good many picking corn."

[4]    Amundson swore that he never advised Newton as to commission he would expect. This evidence is uncontradicted. Under those circumstances was this telegram to respondents competent evidence for any purpose? We think it was. The real question in this case is, Did the minds of the parties meet? The telegram to Amundson was not such a clear statement on the question of commissions as to warrant Amundson in going ahead on the assumption that he could have all over $135 an acre and the tax; especially is this true when the telegram he receives advises him that respondents are wiring him because of information they had received from Newton. Amundson should have taken steps to learn definitely what was in respondent's minds before he assumed that the telegram received by him constituted a definite offer to him of all above the $135 and tax. It is beyond all dispute that, in sending the telegram to Amundson, respondent had in mind a commission of $1 per acre. For this they offered judgment and such judgment was directed. It is quite probable that they would never have sent such telegram if they had known that Amundson had not fixed the commission at $1 per acre. It is quite possible and even probable that, if they had not understood the commission was

to be $1 an acre, they would themselves have named the commission they were willing to allow. The minds of the parties never met.

The judgment and order appealed from are affirmed.